UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/6/21

Bigu Haider, *et al.*,

                Plaintiffs,

–v–

Lyft, Inc.,

                Defendant.

20-cv-2997 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Earlier this year, the Court held that Lyft rideshare divers were exempt from the Federal Arbitration Act under the statutory exemption for transportation workers. *See Haider v. Lyft, Inc.*, No. 20-cv-2997 (AJN), 2021 WL 1226442 (S.D.N.Y. Mar. 31, 2021). It directed the parties to file supplemental briefing addressing whether the claims in this case were arbitrable under state law. Lyft notes in its supplemental briefing that the drivers agreed to revised terms of service after the outset of this litigation stating that Delaware law would govern the parties' arbitration agreement in the event the Federal Arbitration Act did not apply. The drivers do not dispute that their claims are arbitrable under Delaware law, but contend that the Court should not enforce that choice-of-law provision. The Court sees no basis not to do so. It thus finds that Lyft is entitled to compel arbitration under Delaware law and orders this case stayed pending the outcome of arbitration.

I.     **Background**

"[C]ourts apply a 'standard similar to that applicable for a motion for summary judgment'" when deciding a motion to compel arbitration. *Nicosia v. Amazon.com, Inc.*, 834

F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).  The Court thus considers all relevant, admissible evidence before it and draws all reasonable inferences in favor of the non-moving party.  *Id.*

As the Court set forth in its prior opinion, Lyft operates a mobile-based ridesharing platform that matches riders with drivers for personal transportation.  *Haider*, 2021 WL 1226442, at *1.  To use Lyft's mobile phone application, the drivers in this case agreed to Lyft's terms of service.  *Id.*  Lyft updates those terms regularly.  Lyft's terms of service have long included an arbitration provision.  *Haider*, 2021 WL 1226442, at *1.  The revised version of the arbitration provision introduced in Lyft's December 2020 terms of service states that Delaware law shall govern the arbitration provision in the event the FAA is found inapplicable.  Shah Supp. Decl., Dkt. No. 69, Ex. 1, § 17(a).  Lyft's terms of service allow drivers to opt out of the arbitration provision if they do so within the thirty-day period after executing the agreement.  *Id.* § 17(j).

Lyft first published its December 2020 terms of service on its website around December 9 and emailed some of its drivers a message that its terms of service had changed.  Hasan Decl., Dkt. No. 81.  The two drivers in this case, Bigu Haider and Mohammad Islam, did not receive such an email.  Islam Supp. Decl., Dkt. No. 79, ¶¶ 4–6; Haider Supp. Decl., Dkt. No. 80, ¶¶ 4–6.

On December 13, 2020, Islam logged onto the Lyft app and gave a ride to a passenger.  Islam Supp. Decl. ¶ 7.  Islam was not presented with the new Lyft terms of service in the app and did not have to click "I agree" at that time, because Lyft did not begin presenting registered Lyft users with the updated terms of service in the app until early January.  *Id.* ¶ 10; Shah Reply Decl., Dkt. No. 85, ¶ 4.  Haider does not claim to have used the Lyft app between December 9 and when Lyft began presenting drivers with the new terms of service in the app in early

January.  Islam and Haider each sent an email to Lyft expressing their intention to opt out of the revisions to the arbitration provision on January 8, 2021.  Islam Supp. Decl. ¶ 12; Haider Supp. Decl. ¶ 7; Lieu Supp. Decl., Dkt. No. 70, ¶ 7.

Islam and Haider were presented with the new terms of service in the Lyft app later in January. Lieu Supp. Decl. ¶¶ 5–6; *see* Shah Reply Decl. ¶ 4.  Islam agreed to the new terms of service through the Lyft app on January 14, 2021, and Haider agreed to the new terms of service through the Lyft app on January 26, 2021.  Lieu Supp. Decl. ¶¶ 5–6.  Neither driver sent an opt-out email to Lyft after agreeing to the terms of service through the Lyft app.

## II.     Discussion

This case turns on whether Lyft's December 2020 terms of service govern the drivers' claims.  The drivers do not dispute that the arbitration provision in Lyft's December 2020 terms of service requires the application of Delaware law if, as the Court has held, the Federal Arbitration Act does not apply.  They do not dispute that the arbitration provision is enforceable under Delaware law.  And they do not dispute that they agreed to the December 2020 terms of service through the Lyft app in January 2021.  The drivers instead rely on two arguments—first, that the December 2020 terms of service are unenforceable because Lyft introduced them after the outset of this litigation; second, that they each opted out of the revisions to the arbitration provision.  The Court concludes that neither argument has merit.  The Court also concludes that, even if the pre-December 2020 terms of service applied, Islam would be collaterally estopped for contesting the arbitrability of his claims under state law.

### A. The December 2020 terms of service are enforceable

Neither Federal Rule of Civil Procedure 23(d) nor the ethical obligation of attorneys to refrain from communication with represented parties bar enforcement of the December 2020 terms of service.

Federal Rule of Civil Procedure 23(d) grants district courts the discretion to restrict communications between parties and absent class members in class action litigation. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981). However, an order restricting class communications must rest on specific findings of need. *Id.* at 101; *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 602 (2d Cir. 1986). Courts must draw such orders narrowly to limit as little speech as possible while protecting absent class members from improper pressure. *Rossini*, 798 F.2d at 602. "Defendants and their counsel generally may communicate with potential class members in the ordinary course of business" provided that their communications are not false, misleading, or intimidating. Manual for Complex Litigation (Fourth) § 21.12 at 249 (2004).

Based on this principle, a handful of district courts have forbidden the enforcement of arbitration agreements proposed to class members while a class action was pending. *See, e.g.*, *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 603 (S.D.N.Y. 2020); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 (EMC), 2013 WL 6407583, at *3 (N.D. Cal. Dec. 6, 2013), *rev'd*, 904 F.3d 1087, 1095 (9th Cir. 2018); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 570 (S.D.N.Y. 2004). The drivers contend that because Lyft revised its terms of service during this litigation, the Court must set the new terms of service aside.

The cases the drivers cite do not resemble this one. In *Currency Conversion*, *Agilant*, and *Uber*, defendants who had no arbitration agreement with class members introduced arbitration agreements specifically targeted at the pending litigation. *See Agilant*, 444 F. Supp. 3d at 598;

4

*Uber*, 2013 WL 6407583, at *1; *Currency Conversion*, 224 F.R.D. at 569. They did so without informing potential class members of the import of the new agreements and often under highly coercive circumstances. *See, e.g.*, *Agilant*, 444 F. Supp. 3d at 598 (defendant threatened adverse employment action). The Court does not read these cases or Rule 23(d) to prohibit a company from making minor revisions to existing arbitration provisions in the ordinary course of business. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336–37 (2011) (applying arbitration agreement revised during pendency of litigation). That is particularly true where, as here, the arbitration provisions inform potential class members of their impact on pending litigation and provide a mechanism for opt-out. *See* Shah Supp. Decl., Ex. 1, § 17(j).

The drivers' proposed rule would also be unworkable in practice. A large corporation like Lyft may face a number of lawsuits at any given time, and prohibiting routine amendments to their terms of service would essentially freeze their contracts in place. While Rule 23(d) allows a court to enter an order designed to prevent misleading or coercive communications, it does not of its own force prohibit all communication with potential class members that might affect ongoing litigation.

The Court also disagrees that the New York Rules of Professional Conduct bar routine amendments to a company's terms of service. The drivers contend that because Lyft's December 2020 terms of service were drafted by an attorney, presenting those terms to the drivers violated the rule about attorney communications with represented parties. *See* 22 N.Y.C.R.R. § 1200, Rule 4.2(a). Lyft's counsel did not communicate with the drivers about the subject of the litigation by drafting revisions to Lyft's arbitration agreement. Lyft revised its terms of service, and the drivers, in order to continue driving for Lyft, agreed to these new terms.

The drivers cite no authority for the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party.

The Court thus concludes that neither Rule 23(d) nor the New York Rules of Professional Conduct bar enforcement of the December 2020 terms of service. For the same reasons, the Court finds that the terms are not procedurally unconscionable. The December 2020 terms of service are enforceable against those who agreed to them.

**B.  The drivers did not opt out of the December 2020 terms of service**

The Court next turns to whether the drivers opted out of the arbitration provision in the December 2020 terms of service. The December 2020 terms of service allowed drivers to opt out by sending an email to Lyft "within 30 days of the date this Agreement is executed by you." Shah Supp. Decl., Ex. 1, § 17(j). The language of the opt-out provision is clear and specific. The Court agrees with others who have considered similar agreements and concluded that "a driver who accepts the terms of the offer, and enters into an agreement on the offered terms, can only then opt out by following the process outlined in that agreement." *Hood v. Uber Techs., Inc.*, No. 16-cv-998, 2017 WL 11017585, at *3 (M.D.N.C. May 17, 2017). Thus, a driver may opt out of the arbitration provision only by strict compliance with the agreement's opt-out procedures.

"If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract." *Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 303 (S.D.N.Y. 2009) (quoting Restatement (Second) of Contracts § 60); *see also Silber v. New York Life Ins. Co.*, 938 N.Y.S.2d 46, 50 (App. Div. 2012). For this reason, a number of courts have held that attempts to opt out of similar agreements before accepting the agreement are ineffective. *See, e.g.*, *Hood*, 2017 WL 11017585, at *3; *Lee v. Uber Techs., Inc.*,

6

208 F. Supp. 3d 886, 893 (N.D. Ill. 2016).  The drivers here sent opt-out emails to Lyft on January 8, 2021.  Islam Supp. Decl. ¶ 12; Haider Supp. Decl. ¶ 7; Lieu Supp. Decl. ¶ 7.  They did not execute the agreement in the Lyft app until later in January.  Lieu Supp. Decl. ¶¶ 5–6.  Thus, they did not opt out of the arbitration provision as required by the agreement.

The drivers do not dispute that the opt-out provision requires strict compliance.  But they contend that they complied with the provision because they opted out within thirty days of hearing about the new terms of service from other drivers on December 11.  Merely learning of the new terms of service, however, does not create an offer that the drivers could accept.  The drivers concede that they received no communication from Lyft containing the new terms of service until the new terms were presented to them in the Lyft app for their acceptance in January.  *See* Islam Supp. Decl. ¶¶ 4–6, 10; Haider Supp. Decl. ¶¶ 4–6.  There was no offer to accept before that date.  Although Islam contends that he accepted the new terms of service simply by using the Lyft app on December 13, the opt-out provision requires that a driver opt out within thirty days of executing the agreement, not within thirty days of manifesting acceptance through some other means.  Haider, on the other hand, does not claim to have used the Lyft app between December 9 and when he sent his opt-out email.

Because the drivers agreed to the December 2020 terms of service and did not effectively opt out of its arbitration provision, that provision governs their claims.  The drivers do not contest that the arbitration provision in the December 2020 terms of service mandates the application of Delaware law and that Delaware law requires that they arbitrate their claims.  The Court must therefore compel arbitration of the drivers' claims.

### C. Islam is collaterally stopped from relitigating the arbitrability of his claims under state law

The Court further finds that Islam's claims would be subject to arbitration under state law even if the December 2020 terms of service did not apply. Islam litigated precisely this issue in *Islam v. Lyft, Inc.*, No. 20-cv-3004 (RA), 2021 WL 871417 (S.D.N.Y. Mar. 9, 2021), and Judge Abrams found that—in the absence of a choice-of-law provision in the terms of service—his claims were subject to arbitration under New York law. He is collaterally estopped from relitigating this issue here.

"[F]ederal diversity judgments should be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits." *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001)). The Court thus applies New York's law of collateral estoppel to determine the issue-preclusive effect of *Islam*, which involved a claim for breach of contract. *See id.* "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Id.* (quoting *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006)); *see Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 112 (N.Y. 2021). Collateral estoppel under New York law does not apply to pure questions of law, but does apply where both factual and legal issues are present. *See Am. Home Assur. Co. v. Int'l Ins. Co.*, 684 N.E.2d 14, 16 (N.Y. 1997); *see, e.g.*, *Parker v. Blauvelt Volunteer Fire Co.*, 712 N.E.2d 647, 651 (N.Y. 1999).

These requirements are met here. The arbitrability of Islam's claims under state law in *Islam* presented identical issues to those the Court would face if the December 2020 terms of

service did not apply.  Both cases involved the same contract with Lyft.  *See Islam*, 2021 WL 871417, at *2.  In both cases, Islam argued that the contract's choice-of-law provision barred the application of any state's law to the arbitration provision if the FAA did not apply.  *See id.* at *14.  And both cases presented mixed factual and legal questions as to the proper application of the contract and New York's choice-of-law rules.  Islam vigorously litigated these issues and lost on the merits.  The Court concludes that he is therefore collaterally estopped from relitigating them here.

## Conclusion

The Court finds that the drivers agreed that Delaware law would govern the arbitrability of their claims and, because they do not contest that their claims are arbitrable under Delaware law, that Lyft is entitled to compel arbitration.  The Court also finds that Islam is collaterally estopped from relitigating the arbitrability of his claims under Lyft's earlier terms of service.  The Court thus GRANTS Lyft's motion to compel arbitration under state law and STAYS this case pending the outcome of arbitration.  In light of this holding, the Court does not reach Lyft's renewed arguments under the FAA.

This resolves Docket Number 67.

SO ORDERED.

Dated: August 6, 2021
      New York, New York

                                      ALISON J. NATHAN
                                  United States District Judge