UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/11/22

Bigu Haider, *et al.*,

                Plaintiffs,

    –v–

Lyft, Inc.,

                Defendant.

20-cv-2997 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, Circuit Judge, sitting by designation:

    In an Opinion & Order dated August 6, 2021, the Court held that under the terms of service's choice-of-law provision, Lyft was entitled to compel arbitration of the drivers' claims under Delaware law. Opinion & Order, Dkt. No. 92.[1] The drivers now move the Court to reconsider that holding or, in the alternative, to permit the drivers to pursue an interlocutory appeal. For the following reasons, the Court denies the drivers' motion.[2]

**I.    Legal standard**

    The Court presumes the parties' familiarity with the facts of this case, which are presented more fully in the Court's two prior opinions. *See* Dkt. Nos. 62, 92.

    Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3 govern motions for reconsideration. These rules are intended to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with

---

[1] In a prior Opinion & Order, the Court held that the drivers were exempt from arbitration under the Federal Arbitration Act. *Haider v. Lyft, Inc.*, No. 20-CV-2997 (AJN), 2021 WL 1226442, at *1 (S.D.N.Y. Mar. 31, 2021).

[2] The drivers' motion to amend their complaint to add a Plaintiff remains pending. Dkt. No. 102.

additional matters." *Medisim Ltd. v. BestMed LLC*, No. 10-CV-2463 (SAS), 2012 WL 1450420, at *1 (S.D.N.Y. Apr. 23, 2012) (citation and internal quotation marks omitted). "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (cleaned up); *accord Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). An error is clear only if the Court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (quoting *United States v. Garcia*, 413 F.3d 201, 222 (2d Cir. 2005)). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). The decision whether to grant such a motion "rests within the sound discretion of the district court." *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory appeal from an order if it concludes that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (quoting 28 U.S.C. § 1292(b)). "Section 1292(b)'s legislative

history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals." *Id.*

## II.     Discussion

The drivers argue that reconsideration is required to correct several clear errors made by the Court in its August 6, 2021 opinion. First, the drivers argue the Court erred in holding that the amended arbitration agreement did not violate Federal Rule of Civil Procedure 23(d) or New York Rules of Professional Conduct as an improper communication with represented parties. Second, they contend the Court misconstrued New York contract law in concluding that the drivers did not validly opt out of the revised arbitration agreement. Third, the drivers claim that Plaintiff Mohammad Islam is not collaterally estopped from litigating arbitrability under state law. Last, if the Court does not grant reconsideration, the drivers ask in the alternative that the Court (a) lift the stay and dismiss the action so that they may appeal the final order to the Second Circuit or (b) certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b).

The Court concludes that reconsideration of its prior opinion is unwarranted. The drivers reargue issues previously presented to, and decided by, the Court. That the Court disagreed with the drivers does not constitute clear error. *See R.F.M.A.S., Inc.*, 640 F. Supp. 2d at 509. And on the merits, the Court again concludes that the drivers are bound to arbitrate their claims under Delaware law.

As to the drivers' other arguments, the Court concludes that the stay is mandatory under state law—and so may not be lifted to dismiss the case—and that the strict standard necessary for an interlocutory appeal is not met.

   **A. Enforceability under Rule 23(d) and the New York Rules of Professional Conduct**

The Court held that Rule 23(d) does not bar enforcement of the revised arbitration agreement. It explained that Lyft's revision to the terms of service were minor, that Lyft properly explained the impact of the revision on putative class members, and that such class members could opt out. Opinion & Order at 4–5. Those features distinguish this case from those cases relied on by the drivers where revisions were major—like introducing a novel arbitration agreement rather than modifying a choice-of-law provision—and/or did so in an opaque or coercive manner. *Id.* (citing *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 603 (S.D.N.Y. 2020); *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 (EMC), 2013 WL 6407583, at *3 (N.D. Cal. Dec. 6, 2013), *rev'd*, 904 F.3d 1087, 1095 (9th Cir. 2018); *In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 570 (S.D.N.Y. 2004)).

In its brief, the drivers point the Court back to *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216 (S.D.N.Y. 2020), a case the parties previously briefed. *See* Dkt. No. 84 at 5–7. There, the court found that an agreement that expanded the scope of substantive claims covered by an arbitration provision warranted remediation under Rule 23(d) because it was sent to putative class members using a new and confusing electronic procedure. *Id.* at 271. The court did not hold the agreement to be unenforceable—as the drivers seek here—but instead ordered that the agreement be sent again with an opt-out notice—which the agreement here already included. *See id.* at 271–72. The other cases cited by the drivers are similarly off the mark. *See Long v. Fid. Water Sys., Inc.*, No. C-97-20118 (RMW), 2000 WL 989914 (N.D. Cal. May 26, 2000) (brand-new arbitration provision mid-litigation, no notice of effect on litigation, and the court doubted that plaintiff actually accepted the new provision); *Portillo v. Nat'l Freight, Inc.*, No. 15-CV-7908-JHR-KMW, 2021 WL 3486894, at *5 (D.N.J. Aug. 9, 2021) (mid-litigation choice-of-law amendment after the court issued a choice-of-law ruling was "misleading and

coercive" because it did not explain how it would "affect [class members'] rights in this litigation" and apparently included no opt-out provision); *Balasanyan v. Nordstrom, Inc.*, No. 10-CV-2671-JM-WMC, 2012 WL 760566, at *2–4 (S.D. Cal. Mar. 8, 2012) (amendment to arbitration provision expanded scope of claims covered, failed to alert class members' to the effect on pending litigation, and provided no opt-out). The drivers therefore fail to identify a clear error in the Court's Rule 23(d) analysis that requires reconsideration.

The same is true of the Court's conclusion that the revised arbitration agreement constitutes an unauthorized communication with a represented party in violation of the New York Rules of Professional Conduct. An amendment to a company's terms of service is not a prohibited communication with a represented party merely because the company's counsel presumably drafted the amendment. The drivers highlight two cases they previously cited to the Court, *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015), and *Salgado v. Carrows Restaurants, Inc.*, No. 2D CIV. B304799, 2021 WL 2199436 (Cal. Ct. App. June 1, 2021) (unpublished). Yet in *Berkson*, the defendant made a *settlement offer*, in the form of a full refund check, to a named plaintiff without notifying his attorney. 97 F. Supp. 3d at 370. And in *Salgado*—an unpublished decision by an intermediate state court—the plaintiff was confronted by her employer, who said her case was meritless and forced her to sign a new arbitration agreement or else "not bother returning to work." 2021 WL 2199436, at *1. Those facts are plainly distinguishable, and the heart of the *Salgado* court's holding was that the agreement was unenforceable on unconscionability grounds. *Id.* at *5–7. The Court concludes that reconsideration on this basis is not warranted.

**B. Opt-out under New York contract law**

The Court held that the drivers did not validly opt out of the amended arbitration agreement because they sent their preemptive opt-out emails to Lyft on January 8, 2021, but did not execute the agreement in the Lyft app until later in January. Opinion & Order at 6–7. The drivers assert this conclusion was clear error on the basis of two arguments previously raised to the Court. First, they argue that the revised terms of service were "offered" to the drivers when they learned through other drivers that Lyft had publicized changes to the terms of service on its website. Pls. Br. at 12, Dkt. No. 96. But "[m]erely learning of the new terms of service" through other drivers does not constitute an offer by Lyft. Opinion & Order at 7. Rather, as the drivers' own authorities confirm, the offer must be *communicated* by the offeror to the offeree. *See Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 106 (2018) (citing *Zheng v. City of New York*, 19 N.Y.3d 556, 571 (2012)); 1 Williston on Contracts § 4:16 (4th ed. 2021) ("In short, in order for an offer to exist, it must constitute a manifestation communicated to the offeree so as to justify the offeree in understanding that by assenting a bargain will be concluded."). Such an offer was communicated only when the drivers were presented with the updated terms of service and they were given the option to affirm they "agree" to those terms later in January. Opinion & Order at 2–3.

Second, the drivers argue that they executed their acceptance of the contract at an earlier time. But Islam's use of the Lyft app on December 13, 2020, cannot constitute an acceptance of the revised terms of service because he had not yet been offered those terms and he had not executed the terms by selecting the option, "I agree." Nor did the drivers' preemptive opt-out emails constitute acceptances, as the terms of service unambiguously required that any opt-out be sent only after the drivers executed the agreement. An opt-out sent before an offer is made and

6

before the agreement is executed is invalid.  *See, e.g.*, *Hood v. Uber Techs., Inc.*, No. 16-cv-998, 2017 WL 11017585, at *3 (M.D.N.C. May 17, 2017).

Because the Court has already considered and decided the precise arguments that the drivers raise, and because the Court is not left with the definite and firm conviction that it made a mistake, the Court denies reconsideration on this basis.

### C.  Collateral estoppel of Plaintiff Islam

The drivers argue the Court clearly erred in holding that Islam was collaterally estopped from relitigating the arbitrability of his claims under state law because, they say, the issue involves a pure question of law rather than mixed factual and legal questions.  They do so by characterizing Islam's argument as a narrow matter of contract interpretation.  Pls. Br. at 17.  But this Court's opinion and Judge Abrams's decision in *Islam v. Lyft, Inc.*, 524 F. Supp. 3d 338, 359–60 (S.D.N.Y. 2021), both decided that Islam accepted the agreement at issue here, that New York choice-of-law rules applied because of the state's interest in the case, and that Islam's claims were arbitrable under state law.  Moreover, as Lyft previously argued and raises again in its briefing, because identical parties, and even counsel, were involved in this case and in *Islam*, Islam is further precluded from relitigating questions of *law*.  *See Kret by Kret v. Brookdale Hosp. Med. Ctr.*, 93 A.D.2d 449, 455 & n.3 (2d Dep't 1983), *aff'd*, 462 N.E.2d 147 (N.Y. 1984); *Gramatan Home Invs. Corp. v. Lopez*, 386 N.E.2d 1328, 1331 (N.Y. 1979).  Therefore, even if the Court did clearly err and Islam did validly accept an open offer prior to his opt-out, he is nevertheless precluded from litigating the arbitrability of his claims under state law because he has already lost that argument on the merits before Judge Abrams.

### D.  The drivers' remaining requests

7

Separate from their motion for reconsideration, the drivers make two final requests, both of which would accelerate the Second Circuit's consideration of their claims on appeal. *First*, they ask the Court to exercise its discretion to lift the stay that it imposed when it compelled arbitration and dismiss the action so that the Second Circuit may have jurisdiction over a final order of the Court under 28 U.S.C. § 1291. The problem with this request, which the drivers apparently concede in their reply brief, is that the Court has no discretion to lift the stay because it is mandatory, whether issued under New York or Delaware law. Del. Code tit. 10 § 5703(a); N.Y. C.P.L.R. § 7503(a); *accord Islam v. Lyft, Inc.*, No. 20-CV-3004 (RA), 2021 WL 2651653, at *3 (S.D.N.Y. June 28, 2021). Accordingly, the Court must deny the drivers' request to lift the stay and dismiss this action.

*Second*, the drivers request that the Court issue an order under 28 U.S.C. § 1292(b) certifying for an interlocutory appeal to the Second Circuit the issues of whether the amended arbitration agreement is unenforceable under either Rule 23(d) or the New York Rules of Professional Conduct. Pls. Reply at 5, Dkt. No. 100. In their opening brief, the drivers quote § 1292(b) and assert their request for an interlocutory appeal. Pls. Br. at 18–19. It is only in their reply brief that the drivers attempt to prove they have satisfied the requirements of § 1292(b) and are entitled to this "strongly disfavored" relief. *Adar Bays, LLC v. Aim Expl., Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018). Consequently, the Court likely cannot consider this request on the merits. *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2021 WL 5154110, at *5 (S.D.N.Y. Nov. 5, 2021) ("Because this argument is raised for the first time on reply, it is waived.").

But any waiver aside, the drivers have not demonstrated entitlement to an interlocutory appeal because the requested appeal does not involve a controlling question of law and there is

not substantial ground for difference of opinion. First, the drivers have not shown that determining the enforceability of this amended arbitration agreement would have, as they claim, "precedential value for a large number of cases." Pls. Reply at 5 (quoting *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001)). Unlike in *Islam*—where Judge Abrams certified "frequently litigated issues" that have sharply divided federal courts across the country, *Islam*, 2021 WL 2651653, at *5—the paucity of case law noted above indicates that the issues to be certified in this case are relatively rare. Even if the drivers are right to predict that similar cases will soon arise, the particular facts of this case would likely limit the precedential value of any interlocutory appeal. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014). Second, the drivers have not identified a legal issue for appeal that is "particularly difficult" or that has divided courts on similar facts. *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN), 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015); *see Murray v. UBS Sec., LLC*, No. 12 CIV. 5914 (KPF), 2014 WL 1316472, at *5 (S.D.N.Y. Apr. 1, 2014) (denying an interlocutory appeal of a motion to compel arbitration because "there is not conflicting authority on this issue"). In sum, an interlocutory appeal is likely only to delay adjudication of this case and it is therefore denied. *See Murray*, 2014 WL 1316472, at *7.

**III.   Conclusion**

For the foregoing reasons, the Court DENIES the drivers' motion for reconsideration and further DENIES their requests to lift the stay or to certify an issue for interlocutory appeal.

This resolves Docket Number 94.

SO ORDERED.

Dated: May 11, 2022
       New York, New York

                                              ALISON J. NATHAN
                                       United States Circuit Judge
                                          Sitting by designation